Argued May 24, reversed and remanded June 18, petition for
rehearing denied July 11, petition for review
denied September 21, 1973

STATE OF OREGON, *Respondent, v.* DENNIS
LOWRY CHILDERS (No. 72-716-C), *Appellant.*
511 P2d 447

*William A. Masters,* certified law student, Willamette University, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public

Defender, and John K. Hoover, Deputy Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

Defendant appeals from his conviction after a bench trial for criminal activity in drugs, specifically for possession of lysergic acid diethylamide, or LSD. ORS 167.207 (1). Before trial defendant moved to suppress the drugs which were the subject of the indictment. The trial court denied the suppression motion, and on appeal the defendant asserted that this denial was error.

The defendant's arrest occurred in the early morning hours of April 26, 1972. At about 1:20 a.m. Deputy Sheriff Oachs, of the Jackson County Sheriff's office, while on motor patrol, observed a station wagon operating "very slowly" in a state park area. The vehicle proceeded down a boat ramp to within 10 or 15 feet of the Rogue river, and then stopped.

Deputy Oachs felt that this activity was unusual and suspicious. He drove up behind the parked vehicle and approached it to investigate. The defendant was the driver of the car. Deputy Oachs asked to see the defendant's driver's license. At this time the car window was rolled down. Deputy Oachs could smell a very strong odor of incense in the car, and "* * * [he] thought [he] could detect an odor of marijuana."

The defendant produced a current Oregon driver's license, and Deputy Oachs then asked defendant to walk back to the deputy's car. Deputy Oachs testified that the smell of marihuana was somewhat stronger when the defendant was outside the station wagon, but the deputy still could not positively identify the odor as that of marihuana.

In response to the officer's questions, the defendant explained that he had stopped on the boat ramp because he was tired and wanted to sleep for awhile. Deputy Oachs testified that the defendant seemed irritable and that his speech was somewhat slurred.

The defendant and Deputy Oachs then returned to the defendant's car, and Deputy Oachs requested identification from the defendant's female passenger. She could produce only a slip of paper recording a doctor's appointment for the next day in Santa Cruz, California. Although the passenger told Deputy Oachs that she was 19, the officer felt that she was considerably younger.

Deputy Oachs testified that he felt the circumstances warranted further investigation, but decided that he should summon assistance before doing so. At this point he drove away from the defendant's car and parked in another portion of the park.

The defendant's station wagon almost immediately left the park and entered the highway. Deputy Oachs followed, and soon stopped the defendant again, having noticed that defendant did not have a light over his rear license plate in violation of ORS 483.406 (2).

Deputy Oachs asked to see defendant's vehicle registration, and defendant said that he had lost it. Although Deputy Oachs had earlier requested a

records check on the defendant's car, he had not yet received any response on the check.

Deputy Sheriff Daley soon arrived to assist Deputy Oachs. After the defendant refused to consent to a search of the station wagon, the officers conducted an "equipment check" of the vehicle. They found that the car had an "inadequate" hand brake.

The officers then arrested the defendant because he did not have any registration, and for the "inadequate" hand brake. *See,* ORS 481.230 (4), 483.-050 (1), (2), 483.444 (1).

A police officer may "* * * arrest *or* issue a citation" to a person for a traffic offense. ORS 484.-100 (1). (Emphasis supplied.) Here, the officers explained that they arrested the defendant, rather than issuing a citation, because the defendant admitted that the address on his driver's license was not his, but his parents, and that, in fact, the defendant had no permanent address.

Since the defendant's passenger admitted that she was only 14 and had no driver's license, and since the defendant was in custody, the officers then called a towing company to remove the defendant's car. Pursuant to their normal procedure, the officers next conducted an inventory search of the station wagon.

During this search, they found a large plastic baggie which contained several smaller baggies filled with pills. The pills appeared to be homemade, and the officers suspected that they consisted of an illegal drug. Later testing showed that the pills were in fact LSD.

■ Defendant contends that these LSD pills should have been suppressed. He first argues that the initial stop in the park by Deputy Oachs was invalid.

We do not agree. Of course, Deputy Oachs did not literally "stop" the defendant, since he was already parked on the boat ramp, and the late hour, the defendant's very slow driving and his unusual choice of a parking place on the boat ramp, all justified the officer's brief investigation. *See, State v. Head,* — Or App —, 509 P2d 52 (1973); *State, v. Smith,* 10 Or App 557, 500 P2d 1217 (1972).

The defendant next attacks the validity of the inventory search of his car.

■ The trial court upheld this search on the basis of our opinion in *State v. Keller,* 9 Or App 613, 497 P2d 868 (1972). The trial court found, as *Keller* required, that the inventory search here was made pursuant to a bona fide arrest, that, since the defendant was in custody and the young passenger had no driver's license, the vehicle had to be towed, and that the search was not a general exploratory search, but was intended only to secure the defendant's property.

These findings are supported by evidence in the record and we do not disturb them on this appeal. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). However, since the trial in this case, the Supreme Court has reversed our decision in *Keller. State v. Keller,* 265 Or 622, 510 P2d 568 (1973).

In its opinion in *Keller,* our Supreme Court struck down an inventory search which included the opening of a closed tackle box and the inventorying of the contents of the box. The court condemned any inventory search which involves probing into closed containers. The court noted:

"* * * With no exigent circumstances present they [the police] could have easily inventoried

'one fishing tackle box,' along with other items in plain view * * *." *State v. Keller,* supra at 625-26.

■ Warrantless searches are *per se* unreasonable, and the state bears the burden of their justification. *See, Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970).

■ Here, the state's own evidence failed to establish that the drugs seized were found in plain view and without intrusion into a closed container.

During the hearing on the motion to suppress, Deputy Sheriff Daley, who found the pills, testified that the back seat of the defendant's station wagon was folded down to create a flat surface "* * * like you wanted to make it into a bed. Directly in back of the front seat on the platform was a large baggie containing thirteen small plastic bags which contained 100 pills each in tablet form."

This testimony might indicate that the pills were in "plain view" when discovered by the officer. However, at trial, when the defendant again urged his motion to suppress, Deputy Daley said:

"Well, as I was going into the back portion of the station wagon there it was laid out into a bed fashion. In other words, the back seat was down. There was [sic] two sleeping bags. *As I lifted one sleeping bag* I found a plastic bag * * *." (Emphasis supplied.)

Certainly, this testimony contradicts any suggestion that the tablets were found in plain view. The statement, "I lifted one sleeping bag," even indicates that Officer Daley may have raised the top of the sleeping bag and then looked *inside* the bag.

Clearly, the state did not prove, as *Keller* requires, that the pills were found in plain view and without intrusion into a container, here the sleeping bag. Just as the police in *Keller* could have simply inventoried "one fishing tackle box," in this case the officers could have just listed "one sleeping bag."

■ ■ However, the state argues that, even if the inventory search was not valid, still Deputy Oachs had probable cause to search the car after he smelled burning marihuana. In its brief the state correctly points out that when an officer smells marihuana in a vehicle, he has probable cause to believe that a crime is being committed in his presence, and probable cause to search for evidence of the crime. *State v. Smith,* supra. *State v. Devine,* 9 Or App 424, 496 P2d 51, Sup Ct *review denied* (1972). The state also notes, again correctly, that even though the officer does not realize that he has probable cause to arrest and search, and so seizes upon another, illegitimate ground for the search, still this legal error does not invalidate the search. *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969).

■ However, these rules are inapplicable in this case simply because, in fact, Deputy Oachs did not have probable cause to arrest and search since the officer was so uncertain as to whether he had really smelled the odor of marihuana.

"* * * Without a warrant, an officer may arrest when a felony has been committed and he has reasonable cause for belief that the person arrested has committed it * * *. Probable cause is the existence of circumstances which would lead a reasonably prudent man to believe in the guilt of the arrested party. Mere suspicion or belief, unsupported by facts or circumstances is insufficient * * *." *State v. Jones,* 248 Or 428, 432, 435 P2d

317 (1967). *See also, State v. Keith,* supra, 2 Or App at 142.

■ Here, Deputy Oachs did not, and said he could not, reasonably believe that the defendant had been smoking marihuana. By the officer's own testimony, he had, at most, a suspicion that the defendant *might* have been smoking marihuana. Although absolute certainty is not requisite to finding probable cause, still there must be "facts or circumstances" to support the inference, not "* * * [m]ere suspicion or belief." *State v. Jones,* supra.

Deputy Oachs admitted that he was "pretty hazy" about the marihuana smell when he first approached the defendant's station wagon parked on the boat ramp. When the defendant was outside the vehicle, the marihuana smell was somewhat more definite, but Deputy Oachs could only say that then the odor was "a little more than hazy." The officer was never at all positive about the smell.

When Deputy Oachs arrested the defendant on the traffic charges he "pat searched" him and found some cigarette papers and "some dry material that appeared to be *possibly* marijuana." (Emphasis supplied.) Deputy Oachs was not shown to have any expertise in recognizing marihuana.

Both Deputy Oachs and Deputy Daley testified that the defendant was irritable, that his speech was somewhat slurred, and that his eyes were sensitive to light. However, the encounters took place late at night, the defendant was cooperative and coherent, and he had told the officers that he had been driving for hours, that he was very tired, and that he wanted to find a place to sleep. Defendant's symptoms do not

seem particularly suspicious for a tired driver late at night.

All of this testimony indicates only a suggestion that defendant might have been smoking marihuana. The evidence as to the defendant's condition lacks probative force. The testimony as to the marihuana smell is quite "hazy."

We hold that here, by the officer's own testimony, probable cause to arrest defendant for possession of marihuana did not exist, and the search may not be justified on this basis.

We also note that since the officers arrested the defendant on the traffic charges, and since his car was to be towed and impounded, there was ample time in which to attempt to obtain a search warrant based on the officer's suspicions of marihuana use. The protections of the warrant process are especially important when, as here, the officer's beliefs and his factual information are quite indefinite. See *State v. Keller,* supra; *State v. Gwinn,* 12 Or App 444, 506 P2d 187, Sup Ct *review denied* (1973).

Since we hold that the search and seizure here were not justified either by the inventory procedure or by the suspicions of marihuana use, we hold that the defendant's motion to suppress should have been granted.

Reversed and remanded.