Argued March 21, affirmed May 9, 1977

STATE OF OREGON, *Respondent,*
*v.*
JERRY EARL WEEKS, *Appellant.*
(No. C 76-07-10417, CA 7252)

563 P2d 760

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

John W. Burgess, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

LEE, J.

**LEE, J.**

Defendant appeals from his conviction of having possessed a concealable firearm in violation of ORS 166.270.[1] He assigns as error the denial of his motion to suppress both an automatic pistol discovered in the course of a search of a vehicle in which he had been a passenger and a shoulder holster obtained as a result of a search of his person.

While on routine patrol during the early morning hours of July 27, 1976, Officer Rodriguez of the Portland Police Bureau stopped an automobile bearing expired license plates. While making the stop the officer was informed by police radio that as described the automobile was similar in appearance to one used in a robbery the previous evening. Immediately after being halted the driver exited her vehicle and walked back to the patrol car at which time she identified herself as Carlena Davis although she could produce neither a driver's license nor any other identification. Davis also indicated that she owned the automobile she had been driving although she was also without proof of ownership. A radio check subsequently undertaken by the officer revealed that Davis was not in fact the vehicle's registered owner.

Within two minutes of the initial stop Officer Rodriguez was joined by a second police unit comprised of Officers Baxter and Leach. Upon arriving at the scene Officer Leach recognized the driver as the same individual with whom he had spoken about an hour before and who had at that time given a different name when asked to identify herself. Having been informed by Officer Leach of his prior encounter with

---

[1] "Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearms capable of being concealed upon the person, or machine gun, commits the crime of exconvict in possession of a firearm." ORS 166.270(1).

the driver Officer Rodriguez decided to issue the driver a citation for failing to display a driver's license and to take her into custody in order to verify her identity.

Both because the officers present were unsure as to the identity of the owner of the detained vehicle[2] and because of the vehicle's similarity to an auto used in the robbery of the previous evening, they also decided that the car would be towed from the scene and impounded. Officer Leach then initiated, pursuant to standard procedure, an inspection of the vehicle's interior in order to inventory any valuable personal property contained therein. In the course of conducting that inventory, while looking into the open area beneath the front seat, Officer Leach discovered a chrome-plated 9 mm automatic pistol. At that point, although they had previously been told that they were free to leave, defendant and his companion remained present in the immediate area.[3] Based upon the discovery of the weapon and the association of the vehicle with the reported robbery, both defendant and the second passenger were, for the officers' personal protection, immediately subjected to a "pat-down" search for weapons. While patting down defendant, Officer Rodriguez felt what appeared to be a holster under his left shoulder; Rodriguez then looked inside defendant's coat and observed the holster defendant seeks to have excluded from evidence.

Conceding that both the initial stop of the vehicle in which he was a passenger and the subsequent arrest of the driver were themselves lawful,[4] defendant contends that the evidence seized from the vehicle and his person should nonetheless have been suppressed because "* * * the officers in question did not have a

---

[2]Neither defendant, who was a passenger in the car, nor a second passenger, both of whom had identified themselves prior to the arrest of the driver, was the registered owner.

[3]From the time of the driver's arrest defendant had been continuously involved in a discussion with Officer Rodriguez concerning whether the vehicle might be placed in his custody rather than being impounded.

[4]*See* ORS 131.615; 482.300(2), (3); 484.100(1).

reasonable basis for impounding and towing the vehicle, conducting an inventory search, or conducting a pat-down search * * *."

■■ When an automobile stop results in a custodial arrest and no one present can establish either that the vehicle involved is owned by him or is in his possession with the consent of the legal owner, the impoundment of the vehicle until such time as the owner can be notified is a reasonable police procedure. *Cf., State v. Keller,* 265 Or 622, 510 P2d 568 (1973); *State v. Brewton,* 19 Or App 899, 529 P2d 967 (1974), Sup Ct *review denied, cert denied* 423 US 851 (1975). Where, as here, the impoundment of an auto is justified under the circumstances, it follows that the impounding officer may enter the vehicle for the purpose of conducting an inventory of any personal property present. *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976); *Cady v. Dombrowski,* 413 US 433, 93 S Ct 2523, 37 L Ed 2d 706 (1973); *State v. Keller, supra,* 265 Or at 624; *State v. Elk,* 249 Or 614, 626, 439 P2d 1011 (1968). The firearm involved in this case came immediately into Officer Leach's view when he looked into the space between the auto's floorboard and the passenger's seat, not an uncommon location for those traveling in automobiles to place their personal effects; nothing was either moved or opened by Officer Leach prior to his observation of the weapon.[5] The weapon was, therefore, discovered in the course of a lawful inventory search.

■ Once the firearm had been discovered the totality of the circumstances, including the fact that the vehicle was similar in appearance to an auto used in a recent robbery, was sufficient to give rise to a reasonable suspicion that defendant and his companion were presently armed and dangerous. Accordingly, the officers present were acting lawfully when they proceeded to subject the two men to a limited pat-down search or

_____
[5] *Cf., State v. Childers,* 18 Or App 564, 526 P2d 446, Sup Ct *review denied* (1974).

"frisk." *State v. Jackson,* 27 Or App 879, 557 P2d 691 (1976), Sup Ct *review denied* (1977). When in the course of frisking defendant Officer Rodriguez felt what was apparently a holster under his shoulder, the further "intrusion" of looking under defendant's coat was reasonably necessary to determine whether he was in fact armed. The limited search which produced the holster was therefore "* * * the tempered act of a policeman who in the course of an investigation had to make a quick decision as to how to protect himself and others from possible danger, and took limited steps to do so,"[6] and as such was neither unreasonable nor unlawful.

■ Upon the discovery of the holster defendant was placed under arrest for "carrying a concealed weapon" (ORS 166.240); at that point both the holster and firearm were susceptible to being seized as evidence.[7]

Affirmed.

---

[6] *Terry v. Ohio,* 392 US 1, 28, 88 S Ct 1868, 20 L Ed 2d 889 (1968).

[7] Defendant has not challenged the legality of the seizure, as opposed to the discovery, of the holster and pistol.