Argued June 20, opinion reversed August 2, reconsideration denied
October 10, 1978, petition for review denied February 21, 1979

STATE OF OREGON, *Appellant,*
*v.*
MARK DOUGLAS CROSBY, aka Mark Fortik,
*Respondent.*
(No. 2248-C, CA 9758)
582 P2d 40

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. On the brief was James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Kathleen G. Dahlin, Certified Law Student, Salem.

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

[ 617 ]

**GILLETTE, J.**

Defendant was charged with theft of a rifle. The state, pursuant to ORS 136.080, appeals a circuit court order suppressing the rifle and certain other evidence seized from defendant's automobile by the Caldwell, Idaho, Police Department. Defendant had been arrested in Caldwell. The automobile was searched pursuant to a search warrant which the parties now agree was invalid. The state contends, however, the police had probable cause and exigent circumstances to search the vehicle and that, in any event, the evidence would have been uncovered pursuant to a valid inventory of the automobile. We agree, and reverse.

In Caldwell, at approximately 4:30 a.m. on May 24, 1977, Dennis Armstrong was awakened by a loud noise outside his house. Armstrong got out of bed, looked out his window and saw a two-toned Buick pull up. Armstrong observed two men get out of the car, walk into his neighbor's yard and shine a flashlight on his neighbor's pickup. Armstrong called the police to report the two prowlers. While he was on the phone, Armstrong saw the men get in his (Armstrong's) pickup, which was parked in front of his house. The men then got out of Armstrong's pickup and started up the street.

Within a few minutes, Officer Siegmann of the Caldwell City Police was dispatched to investigate a possible vehicle burglary at Armstrong's residence on O'Hara Street. As he approached the street leading to Armstrong's house, Siegmann saw two men running from the scene. Siegmann turned onto O'Hara Street where he spotted a two-toned Buick which matched the dispatcher's description of the suspects' car. He pulled in front of the Buick, copied the license number and reported it to the dispatcher. At that time, the Buick doors were both tightly shut. Siegmann also requested assistance at the scene.

Leaving the place where the Buick was parked, Siegmann drove down a street which intersects O'Hara Street. Within two or three minutes, several other officers arrived on the scene.

Siegmann and another policeman searched the area for the suspects. As he returned to where the Buick was parked and approached the car, Siegmann noticed that the driver's door was slightly ajar. Looking inside, he saw a man lying on the front seat. The man's shoes were covered with mud. Siegmann told the man to get out of the car. The man got out and identified himself as James Zimmerman. The police took Zimmerman into custody and transported him to the Caldwell Police Department.

Officer Siegmann looked inside the car and noticed a battery charger, a doctor's office sign, some antenna cord and a number of other items scattered about the car. He seized the items and made a list of them.

About 15 or 20 minutes later, Dennis Armstrong's 10-year-old son, who was standing outside his house, began yelling "There is the other one. The other one is in the pasture below the house." Siegmann approached the pasture and apprehended the defendant, Mark Crosby. He escorted defendant to where the Buick was parked, frisked him for weapons, and advised him that he was under arrest for suspicion of vehicle burglary.[1] Defendant indicated that the car was not his, but that he had driven it to Caldwell. According to defendant, he stopped the car because he had drunk too much and was afraid that the right front tire, which had only two lug nuts, might come off. Another officer transported defendant to the police station.

The police drove the Buick to the police department where they impounded it. The Buick was parked on a ramp alongside the police department building. Uncontradicted testimony, which the trial court apparently believed, established that the Caldwell Police

---

[1] In Idaho, breaking into a closed vehicle with the intent to commit grant or petit larceny is burglary. I.C. § 18-1401.

Department customarily examines the contents of impounded cars and makes a list of all property found inside. The trunk is inventoried if a key to it is available; otherwise, it is not. In this case, a key was available. In this instance, Officer Siegmann believed an inventory would have been proper, but he decided to obtain a search warrant because he wanted to look inside the car in "the most proper way." Therefore, a search warrant was obtained and, at approximately 10:30 a.m., two other officers searched the car, including its trunk. They found a Browning 30/06 caliber rifle and a VeryX2 telescope in the trunk. The police ran the serial numbers of the rifle and the telescope through the National Crime Information Center and discovered that both were stolen. The Caldwell police then contacted the police department of Ontario, Oregon, and the Oregon State Police, who had originally reported that the rifle and telescope were stolen.

Evidence discovered pursuant to a valid inventory search may properly be seized. *South Dakota v. Opperman,* 428 US 364, 98 S Ct 3092, 49 L Ed 2d 1000 (1976); *State v. Weeks,* 29 Or App 351, 355, 563 P2d 760 (1977). The trial court found, however, that

> "[t]he arresting officer thought there might be stolen property in the trunk of the automobile and the resultant search was purely exploratory [;] * * * the investigatory police motive * * * will not support said search under these circumstances."

The court further found that

> "[s]ince the search was as a result of the said investigatory police motive, such search was not a routine inventory search of an automobile lawfully impounded by police authorities and cannot be justified upon the basis that a routine inventory search may have later resulted in the location of the stolen property * * *."

The trial court applied the wrong standard to its review of the police actions in this case. The issue is not what the officers *intended* to do, but what, under the objective facts, they had a *right* to do. *State v.*

*Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978). *See also State v. Cloman,* 254 Or 1, 12, 456 P2d 67 (1969). The evidence here is that the officers would, as a matter of routine, have inventoried the trunk of this car in any event. The search and resultant seizure were thus proper. *South Dakota v. Opperman, supra. Cf. State v. Weeks, supra.*[2]

Because of the disposition we make of this case, we are not required to consider the state's second theory, *viz.,* that there existed probable cause and exigent circumstances which justified the search.

The order of the trial court suppressing evidence is reversed.

---

[2] *State v. Keller,* 265 Or 622, 510 P2d 568 (1973) is not *contra.* It involved a separate, smaller, closed container *within* a vehicle, as opposed to the vehicle itself. The inventorying of the trunk in this case is, in our view, analogous to the inventory of the interior of the defendant's car in *Keller.*