Aruged and submitted September 17, 1982, resubmitted in banc June 8, reversed and remanded on defendant's cross-appeal September 21, reconsideration denied November 4, petition for review allowed December 6, 1983 (296 Or 195) See 298 Or 1, 688 P2d 832 (1984)

# STATE OF OREGON,
*Appellant, Cross-Respondent,*

*v.*

# JAMES HENRY ATKINSON,
*Respondent, Cross-Appellant.*

(28525, 28547, 27548; CA A22274)

669 P2d 343

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant - cross-respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent - cross-appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

BUTTLER, J.

Gillette, J., specially concurring.

Rossman, J., dissenting.

## BUTTLER, J.

Defendant cross-appeals pursuant to ORS 138.040 from a pretrial order denying part of his motions to suppress evidence in three consolidated burglary cases; the state's appeal from the same order was dismissed on its motion.[1] The issue on the cross-appeal is whether the "inventory search" of the glove compartment of a properly impounded automobile, conducted pursuant to the standing policy of the Polk County Sheriff's Department, violates Article I, section 9, of the Oregon Constitution[2] or the Fourth Amendment to the United States Constitution.

The state relies solely on the sheriff's routine policy of inventorying the contents of all impounded motor vehicles to justify both the right to conduct an inventory search and its scope. It does not contend that the officers had probable cause to believe that the automobile was an instrumentality of crime or that there were exigent circumstances authorizing a delayed search incident to the seizure. *See State v. Quinn*, 290 Or 383, 391, 623 P2d 630 (1981). For that reason, the material facts are brief. Defendant concedes that his car was lawfully

---

[1] ORS 138.040 provides, in relevant part:

"The defendant may appeal to the Court of Appeals from a judgment * * * and may cross-appeal when the state appeals pursuant to ORS 138.060(3). * * *"

ORS 138.060(3) provides:

"The state may take an appeal from the circuit court or the district court to the Court of Appeals from:

"* * * * *

"(3) An order made prior to trial suppressing evidence."

On September 24, 1981, the state filed its notice of appeal from the pretrial order granting, in part, defendant's motion to suppress. On October 1, defendant filed his notice of cross-appeal. The state moved to dismiss its appeal and we granted that motion on May 10, 1982. It then moved to dismiss defendant's cross-appeal, contending that this court loses jurisdiction over a cross-appeal on dismissal of the state's appeal. We deny the motion, because ORS 138.040 expressly authorizes a defendant to cross-appeal, and once he has filed his notice of cross-appeal within the time permitted, this court acquires jurisdiction. The state may not oust jurisdiction by dismissing its appeal.

[2] Or Const Art I, § 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

impounded. After it was towed to the Polk County garage, a locked storage shed, Officer Dunkin searched the passenger compartment of the car to make an inventory, but was "also looking for evidence of a crime." He opened the glove compartment and inventoried the contents, which included a map and a bottle of wine. He examined the map and observed that the area in which a burglary had occurred was circled. He also inventoried items he found under the seat, opened a wallet and examined its contents. In addition, he opened the trunk but decided not to inventory its contents, because he was worried "about the legality of looking in a locked container, concerning the trunk, as far as the inventory goes, the admissibility." All of the items that were listed in the inventory were left in the car until the police had obtained two search warrants, after which they were seized. The trial court suppressed all of the evidence seized except the map and wine bottle, the only evidence involved in this appeal.

■   Defendant contends that the initial "inventory" search of his automobile was unreasonably intrusive and that the map and wine bottle subsequently seized should have been suppressed, relying on principles established in *State v. Keller,* 265 Or 622, 510 P2d 568 (1973). In that case, the defendant was arrested for driving with a suspended license, and it was necessary to remove her car from the street. Pursuant to a standing administrative order, the police inventoried the contents of the car and observed an open cosmetic case on the floor with its contents, syringes and needles, in plain view. They also observed a fishing tackle box, held closed by a red wire, on the floor of the back seat. They opened the box to inventory its contents and found five vials of liquid, later determined to be contraband. The court held that, under the "plain view" doctrine, the police could seize evidence that was plainly visible to them when they were in a place where they had a right to be. Accordingly, the court upheld the seizure of the syringes and needles; however, it affirmed the trial court's suppression of the evidence seized from the tackle box after it was opened and searched, because the search of the tackle box was unreasonable under both the Fourth Amendment and Article I, section 9, of the Oregon Constitution. The court stated:

"* * * The vials were within the tackle box which was sealed closed by the red wire, and they were not in 'plain view.' The officers testified they were not searching for evidence, but

were only inventorying the automobile's contents. With no exigent circumstances present they could have easily inventoried 'one fishing tackle box,' *along with other items in plain view.* If they had probable cause to believe a crime was being committed, after seeing the syringes and needles in the open cosmetic case, they could have sought a search warrant from a disinterested magistrate." (Emphasis supplied.) 265 Or at 625-26.

We applied *Keller* in *State v. Childers,* 13 Or App 622, 511 P2d 447, *rev den* (1973), to suppress evidence discovered when an officer lifted and looked underneath a sleeping bag laid out in the back compartment of a station wagon, because that evidence was not in plain view and, therefore, the officer had exceeded the scope of a permissible "inventory" of the contents of defendant's car.

It is clear that the warrantless search of the closed glove compartment of defendant's car exceeded the scope of the kind of "inventory" authorized by *Keller.* The state contends, however, that *Childers* — and impliedly *Keller* — are no longer good law in light of the United States Supreme Court's later decision in *South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976). However, *Keller* relied on the state constitution, as well as the federal one; here defendant also relies on both. It is true that the court in *Keller* did not articulate an interpretation of Article I, section 9, different from the Fourth Amendment; it is also true that subsequently the court held in *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), that it would follow United States Supreme Court decisions interpreting the Fourth Amendment in applying Article I, section 9. Nonetheless, that equation is not carved in stone, and once the Oregon court has interpreted the state constitutional provision, even though consistent with then existing United States Supreme Court decisions, a subsequent change in the latter's interpretation of the Fourth Amendment does not necessarily change the interpretation of the Oregon counterpart. *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

To the contrary, Oregon courts must examine the Oregon law first before considering federal constitutional claims. *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983); *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). We do that here, and unless *Opperman* persuades us that *Keller* is not controlling and that its application of the Fourth Amendment

should be followed in applying Article I, section 9, we are bound to follow *Keller*. *Opperman* persuades us of neither.[3]

In that case, an unattended, illegally parked automobile was towed lawfully to an impounded lot. The lot was described as an "old county highway yard" with a "wooden fence partially around part of it, and kind of a dilapidated wire fence"; in the past, towed, locked cars had been broken into and personal effects had been stolen. At the lot, from outside the car, an officer observed a watch on the dashboard and other personal property on the back seat and back floorboard. The car door was then unlocked, and, pursuant to standard police procedures, the officer inventoried the contents of the car, including the contents of the unlocked glove compartment. There he found a plastic bag of marijuana.

All of the items were removed from the car and taken to the police station for safekeeping. The officer testified that he conducted the inventory for safekeeping, because of the history of thefts from automobiles left in the impoundment lot. The court concluded that, under the "facts and circumstances" of that case, the conduct of the police was "not 'unreasonable.'"

Those facts were not present in *Keller*, and we have no reason to believe the Supreme Court would have decided *Keller* differently if *Opperman* had preceded it. Further, to contend that *Opperman* should control the present case ignores several important differences between the record in that case and the record here. First, the "inventory" here was not justified by a need to protect the owner's property. Unlike in *Opperman*, there is no evidence of past thefts from the impound lot; the car was stored in a locked storage shed, and there is no suggestion that any such problem existed. There is no evidence here that any valuables were in plain view to tempt a thief and thereby trigger the officer's concern for the safekeeping of the property. More importantly, the police left defendant's personal effects in the car rather than removing them for safekeeping. The state's rationale for itemizing the contents of the car to protect the owner's property rings hollow, given the obvious proposition that doing so, without removing it from

---

[3] On remand to the South Dakota Supreme Court, that court invalidated the search under that state's constitution. *State v. Opperman*, 247 NW2d 673 (SD 1976).

the car, provides no greater protection for defendant's property than not inventorying it.

Further, we think it is clear that an "investigatory motive," which the court in *Opperman* noted was not present there, 428 US at 375-76, lay behind the search here. The record indicates that the impounding officers "suspected" that the car might have been used in a burglary. The officer conducting the "inventory" stated that he was "also looking for evidence of a crime" and that he opened the trunk but did not "inventory" the property he observed, because he was concerned about its admissibility in evidence. It is clear that the reason given by the court in *Opperman* as justifying a true inventory of the contents of an impounded vehicle does not exist in this case; here, there was no true inventory.

Because *Opperman* rests on factors not present here or in *Keller*, it does not dispose of defendant's asserted rights under the Fourth Amendment and does not invalidate *Keller*, to the extent that the court relied on the federal constitution; neither does it diminish *Keller's* holding that the search violated the state constitution. Unless and until the Supreme Court overrules it, *Keller* is the law of this state. Given that *Keller* was cited with approval in *State v. Quinn, supra,* 290 Or at 390, and in *State v. Caraher, supra,* we assume that it is alive and well.

In *Quinn,* the court invalidated a warrantless search of the defendant's car after its seizure and defendant's arrest, even though one of the reasons given by the searching officer was that the police were responsible for the contents of the car, which he believed to contain stolen property. 290 Or at 386. The court held that the officer was entitled to seize evidence in plain view and went on to say:

> "* * * Extension of the search to the more private areas of the car, beneath the seats and into the glove compartment and trunk, however, was not permissible under any exception to the warrant requirement. Hence, the discovery of the women's underclothing beneath the seat violated the constitutional right of the defendant to be free from searches which are not authorized by judicial warrant." 290 Or at 393.

It would be anomalous to hold that a permissible warrantless search of an automobile seized from a person who has been

arrested and charged with a crime[4] is more limited in scope than that permitted when a person's car is simply impounded.

We hold that defendant's rights under the state constitution were violated. It follows that the trial court erred in denying his motion to suppress the map and wine bottle seized from the closed glove compartment of his automobile.

Reversed and remanded on defendant's cross-appeal, with instructions to suppress map and wine bottle seized from glove compartment of defendant's car.

**GILLETTE, J.,** specially concurring.

I concur in the result reached by the majority opinion, and in much of what that opinion says. However, I consider the belabored discussion of *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), a towering waste of time. *Keller* was decided during a schizophrenic period in which the Oregon Supreme Court could not settle ōn a course to follow concerning to the respective search and seizure provisions of the state and federal constitutions. The court has now found a course—unwisely, in my view, but definitively nonetheless—and we need look no further than *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983) to tell us that the search here was impermissibly intrusive.

Joseph, C. J., Warden and Young, JJ, join in this specially concurring opinion.

**ROSSMAN, J.,** dissenting.

We have previously stated that where, as in this case, an automobile is lawfully impounded, the impounding officer may enter the vehicle and conduct an inventory of personal property. *See State v. Weeks,* 29 Or App 351, 355, 563 P2d 760 (1977). Whatever this officer's subjective intent, there is no dispute that defendant's automobile was lawfully impounded and that the inventory was conducted pursuant to the standing policy of the sheriff's department. The issue is whether the inspection of the unlocked glove compartment of defendant's car exceeded the scope of inventory searches permitted by the Fourth Amendment and Article I, section 9. In my opinion, it did not, and I must respectfully dissent.

---

[4] *But see State v. Crosby,* 35 Or App 617, 582 P2d 40 (1978), *rev den* 285 Or 319 (1979). To the extent that *Crosby* is inconsistent with this opinion, it is disapproved.

A constitutionally permissible search must pass muster under both the Fourth Amendment of the U.S. Constitution and Article I, section 9, of the Oregon Constitution, which occasionally affords a defendant even greater protection than its federal counterpart. *See State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). In the case under discussion, the inventory search of defendant's car was allowable under either standard.

*South Dakota v. Opperman,* 428 US 364, 96 S Ct 3092, 49 L Ed 2d 1000 (1976), supports the entry of the glove compartment here insofar as the Fourth Amendment is concerned, notwithstanding the majority's extended discussion of the factual distinctions between that decision and our case. We so held in *State v. Crosby,* 35 Or App 617, 582 P2d 40 (1978), *rev den* 285 Or 319, *cert den* 444 US 851 (1979), which the majority has conveniently decided to overrule.[1]

---

[1] The majority's "investigatory motive" analysis was expressly rejected in *State v. Crosby,* 35 Or App 617, 582 P2d 40 (1978), *rev den* 285 Or 319, *cert den* 444 US 951 (1979). Furthermore, the majority's implicit assertion that the absence of a necessity for the inventory under the circumstances is somehow dispositive of the question at issue is less than convincing in light of the Supreme Court's opinion in *Illinois v. Lafayette,* _____ US _____, 103 S Ct 2605, 77 L Ed 2d 65 (1983) (inventory search of a shoulder bag). There the Court explained:

"* * * In South Dakota v. Opperman, supra, * * * [w]e held that the search was reasonable because it served legitimate governmental interests that outweighed the individual's privacy interests in the contents of his car. Those measures protected the owner's property while it was in the custody of the police and protected police against possible false claims of theft. *We found no need to consider the existence of less intrusive means of protecting the police and the property in their custody—such as locking the car and impounding it in safe storage under guard.* Similarly, standardized inventory procedures are appropriate to serve legitimate governmental interests at stake here.

"The Illinois court held that the search of respondent's shoulder bag was unreasonable because 'preservation of the defendant's property and protection of police from claims of lost or stolen property, "could have been achieved in a less intrusive manner." For example, . . . the defendant's shoulder bag could easily have been secured by sealing it within a plastic bag or box and placing it in a secured locker.' 99 Ill App 3d, at 835, 425 NE2d, at 1386 (citation omitted). Perhaps so, but *the real question is not what 'could have been achieved,' but whether the Fourth Amendment requires such steps; it is not our function to write a manual on administering routine, neutral procedures of the stationhouse.* Our role is to assure against violations of the Constitution.

"* * * *We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the stationhouse.* It is evident that a stationhouse search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved." (Emphasis supplied.) 77 L Ed 2d at 71-72.

With respect to the Oregon Constitution, the majority's major premise is incorrect. It seems clear that the court in *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), did *not* decide the precise issue now before us. In *Keller,* the entry of a "tackle box" during an automobile inventory search was held to violate both the Fourth Amendment and Article I, section 9, because the discovery of the drug found inside followed intrusion into a *closed container* and, therefore, was not subject to "plain view" seizure. The cases primarily relied on by the court in *Keller* to support that holding, as well as *State v. Childers,* 13 Or App 622, 511 P2d 447, *rev den* (1973), which followed, each involved a similar closed container, *i.e.,* a container that was one of the separate contents of the automobile rather than a part of the automobile itself.[2]

The distinction is significant, and we recognized it in *State v. Crosby, supra.* In that case, we held that an inventory search of an automobile's trunk was lawful and distinguished *Keller:*

> "*State v. Keller,* 265 Or 622, 510 P2d 568 (1973), is not *contra.* It involved a *separate,* smaller, closed container *within* a vehicle, as opposed to the vehicle itself. The inventorying of the trunk in this case is, in our view, analogous to the inventory of the interior of the defendant's car in *Keller.*" 35 Or App at 622 n 2. (Emphasis in original.)

Although our decision in *Crosby* rested on *South Dakota v. Opperman, supra,* I believe that the distinction is appropriate under the Oregon Constitution and would so hold. In my opinion, that result would preserve the protections established in *State v. Keller, supra,* and serve the legitimate purposes of the inventory.[3]

In addition to the above, I am very much concerned about the practical effect of the majority's decision. Oregon recognizes the authority of law enforcement officers to inventory the contents of lawfully impounded vehicles. Under

---

[2]*See, e.g., Mozzetti v. Superior Court of Sacramento County,* 4 Cal 3d 699, 94 Cal Rptr 412, 484 P2d 84 (1971) (closed suitcase); *State v. Gwinn,* 301 A2d 291 (Del 1973) (closed satchel); *State v. Childers,* 13 Or App 622, 511 P2d 447, *rev den* (1973) (sleeping bag classified as a "container").

[3]The language from *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), quoted by the majority 64 Or App at 523 is not applicable to this case. *Quinn* did not involve an inventory search and does not purport to define the proper scope of an inventory.

the rule espoused by the majority, their ability to carry out that legitimate task is seriously impaired, because they are denied access to an *area of the vehicle* that is, perhaps, more likely than any other to contain the very things they are authorized to inventory. That is like telling someone, "You can swim here, but don't get wet." It may very well be that, as a result of this opinion, an inventory sheet will contain a listing of only the automobile's component parts, *e.g.,* "one glove compartment, one trunk, etc." That result is neither constitutionally required nor supported by common sense.[4]

Richardson, J., joins this dissent.

---

[4] I am also concerned by the great weight accorded *State v. Lowry, supra,* by the concurrence. I see nothing in *Lowry,* which involved a search incident to arrest, to support the decision reached above and I find the deference given that opinion ironic. Perhaps we should wait to see where the Supreme Court's "unwise course" is taking us instead of trying to get there first, because at this rate, I fear the long-established practice of inventory searches may not survive the voyage.