Submitted on record and briefs December 19, 1979,
affirmed March 10, reconsideration denied April 17,
petition for review denied May 1, 1980 (289 Or 71)

## STATE OF OREGON,
*Respondent,*

*v.*

## TERRY LEE ZIMMERLEE,
Appellant.

### (No. C78-09-15489, CA 13241)

607 P2d 782

Terry Lee Zimmerlee, Salem, filed the brief pro se
for appellant.

[107]

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and W. Benny Won, Assistant Attorney General, Salem, filed the brief for respondent.

Before Joseph, Presiding Judge, Richardson, Judge, and Schwab, Chief Judge.*

RICHARDSON, J.

*Schwab, C.J., *vice* Lee, J., deceased.

## RICHARDSON, J.

Defendant was charged with robbery in the second degree but was found guilty by a jury of the lesser included offense of theft in the first degree, ORS 164.055. He appeals denial of his motion to suppress evidence obtained in a search of his person and of the automobile in which he was a passenger. Defendant's second assignment contends his motion for judgment of acquittal of the robbery charge should have been granted. The ground specified in the motion was that there was insufficient evidence that defendant represented he was armed with a dangerous weapon. That claim of error is rendered moot by the jury's verdict.

The evidence presented at the hearing on the motion to suppress disclosed the following sequence of events leading to defendant's arrest. At approximately 5:30 a.m. on September 12, 1978, Portland Police Officer Farris was patrolling his assigned area in a marked police vehicle. As he passed a Plaid Pantry Market he noticed a man walking back and forth in the parking lot in front of the store. Inside the store he saw a man he knew was a store employee standing outside of the checkout counter with his back to the front door. He also saw a man standing near the employee. The officer observed a white sedan, a "sixties model," parked on the street near the side of the store away from the window and entry door area. There were no vehicles in the parking area and the white vehicle had not been parked there when the officer drove by earlier that morning.

Officer Farris drove around the block and stationed his vehicle a short distance from the store. He saw the white sedan accelerate rapidly into a driving lane with its lights off. As the vehicle passed the police officer the driver looked at the officer. Farris followed the vehicle and saw that, in addition to the driver, there was a passenger in the front seat and a passenger in the rear. The front seat passenger leaned over the back of the seat and appeared to be stuffing something

down between the seats. That passenger then threw something out of the vehicle's window. Farris activated his overhead lights and stopped the vehicle at 5:53 a.m. He testified he stopped the vehicle because it was being driven without lights. The officer radioed his position and the fact that he had made a traffic stop.

The officer approached the driver and asked for his operator's license. The driver stated he had a license but did not have it on his person. He produced an identification card. The officer and the driver walked to the rear of the vehicle where the officer told the driver he was stopped for driving without lights. The officer also told the driver that he did not intend to issue a citation for the violation. He asked the driver where he was going and the driver responded that the three men had left a party earlier and he was taking the two passengers home. The officer told the driver he was going to run a radio check on the driver's operator's license and a check on the two passengers.

The officer then approached the vehicle. Defendant was seated in the front passenger seat and the rear passenger was identified by the officer as the man he had seen walking in front of the Plaid Pantry Market. He asked defendant his name and where he was going. Defendant responded that his name was Terry Baker, that he had no identification and that he was hitchhiking and was picked up by the driver of the vehicle. He stated that he did not know the other two men in the car. The rear seat passenger gave his name and said he was also a hitchhiker and did not know defendant or the driver of the vehicle. Officer Farris returned to his vehicle and ran the radio check. He told the driver what the passengers had stated. The driver told the officer he knew both of the men and was taking them home from a party.

Approximately three minutes after the initial stop of the vehicle a second officer arrived and stood to the

rear of the stopped vehicle. At 5:58 a.m., approximately five minutes after the vehicle was stopped, the officers received a radio report that a robbery had occurred a few minutes earlier at the Plaid Pantry Market. The report included a description of the assailant and the vehicle used. The vehicle was described as a white, sixties model, Plymouth sedan. The description of the robber fit defendant.

Officer Farris requested, by radio, that the victim of the robbery be brought to his location for the purpose of identifying the robber. The victim arrived by police vehicle at 6:10 a.m. and identified the defendant as the robber. All three men were arrested. Defendant was searched as was the vehicle. The items seized from defendant and from the vehicle are the subjects of the motion to suppress.

Defendant argues that the stop of the vehicle was an unlawful pretext stop because it was made on the officer's subjective desire to investigate what he considered suspicious circumstances at the Plaid Pantry Market. If the stop of the vehicle was lawful, defendant contends, there was no basis for stopping and detaining defendant, as opposed to the driver of the vehicle. It is further contended that if the stop was lawful the officer's questions to defendant regarding his identity and where he was going were unreasonably intrusive.

At the time the officers received the radio report concerning the robbery at the store, approximately five minutes after the initial stop of the vehicle, they had probable cause to arrest the three men. Defendant fit the description of the suspect described in the radio report, he was riding in a vehicle which fit the description of the vehicle used in the robbery and which had in fact been parked near the store at approximately the time the robbery occurred. The search of the defendant and the vehicle did not occur until after defendant was arrested following receipt of the radio report. The question posed by defendant's argument is

[111]

whether defendant was lawfully stopped and detained up to the point where the robbery report was received.

In *State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979), the Supreme court reiterated the principle of *State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979), that an otherwise authorized traffic stop is not rendered invalid because the officer has suspicion the occupants of the vehicle may be involved in other criminal activity. A police officer has authority to stop a vehicle when its operator has committed a traffic violation in his presence. *State v. Tucker, supra.* In this case the officer observed the vehicle being driven during the hours of darkness without its lights on, a violation of ORS 483.402. He may have suspected some illegal activity involving the Plaid Pantry Market but this does not affect the validity of the stop which was objectively authorized.

Defendant, while conceding *Carter/Dawson* may be contrary to his pretext-stop argument, contends that if the stop of the vehicle and its operator was lawful there was no basis to stop and detain him. Although defendant's progress toward his destination may have been interrupted by the officer's actions, the stop and detention of him were merely as an incident to his being a passenger in a vehicle lawfully stopped.

If we understand defendant's further argument it is that the questions posed to defendant and the other passenger were unrelated to the traffic stop and thus were unreasonably intrusive. The Supreme Court in *Carter/Dawson* faced the issue of the intrusiveness of an otherwise lawful stop. The court apparently adopted this court's statement of the applicable principle discussed in *State v. Carter/Dawson,* 34 Or App 21, 578 P2d 790 (1978). There we explained the basic standard to be that:

> "* * * Traffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin questioning, searching or investigating that is unrelated to the traffic reason for the stop." 34 Or App at 32.

We noted in *Carter/Dawson* that the officer who made the traffic stop asked for the driver's identification and for the vehicle registration. He then proceeded to run a "record check" via his police radio on the operator and the vehicle registration. We said when the record check came back "clear" the officer could do no more than write a citation and send the defendants on their way. The implication is that the officer's conduct in asking for an operator's license and vehicle registration and running a radio check was reasonably related to the traffic stop and did not unlawfully extend the duration of the stop. *See also State v. Brister,* 34 Or App 575, 579 P2d 863, *rev den* 284 Or 521 (1978).

In the case here at issue the time interval between the initial stop and the radio report of the robbery was five minutes. During this interval the officer talked to the driver about the offense of driving without lights and asked for his operator's license. He also asked defendant his name and destination. Following these conversations he went to his vehicle to run a radio check on the driver's operator's license and the names given by the passengers. Just after he made the radio call the report of the robbery was broadcast over the police radio. Thus at the time the robbery report came in the officer was involved in activities related to the traffic stop. He may have been delayed for an instant in his return to the police vehicle by talking to defendant, but this delay, if it can be considered a delay, was deminimus.

We conclude the search of defendant and the vehicle was lawful and the motion to suppress properly denied.

Affirmed.