Argued and submitted February 29, reversed and remanded for new trial May 11, 1988

# STATE OF OREGON,
*Respondent,*

*v.*

# KENNETH MEARLE HOUGHTON,
*Appellant.*

## (86-990; CA A45005)

754 P2d 13

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals his conviction of being an ex-convict in possession of a firearm. ORS 166.270. At issue is whether defendant's detention and frisk were lawful.

On November 15, 1986, at about 3:20 p.m., Officer Carpenter was on patrol near Carver. He saw a woman in a car parked on the side of the road. Later, he saw a man walking in the direction of the car. Around a curve, the officer noticed two other persons in a car parked on the side of the road. He remembered that, a week earlier, he had stopped that car and arrested its driver for driving while suspended. He also recognized the driver and decided to arrest him again. The officer questioned him and learned that he had picked up defendant, who had been hitchhiking, and that the car had broken down. The officer then asked defendant, who was sitting in the front passenger seat, for identification. He testified that he wanted to know whether defendant could drive the car, if the arrested driver wanted to release it to him. Defendant presented the officer with a valid Oregon identification card. When the officer said that he would run a MVD check, defendant responded that there was no need to do so, because he had no driver's license. Because of that statement and because of defendant's nervous appearance and the odd posture in which he was sitting, the officer concluded that defendant had something to hide and ran the check anyway. The check showed that he had been convicted of robbery in the first degree in 1980. The officer ordered defendant out of the car. He started to get out by the passenger door, but the officer told him to come out on the driver's side. Defendant placed his feet up on the seat and scooted out the driver's side. The officer became suspicious that defendant might have a hidden weapon. He frisked him and found a loaded revolver tucked in his belt.

Before trial, defendant moved to suppress the seized gun as well as the statements that he had made after discovery of the weapon. The trial judge denied the motion and found defendant guilty of the charged crime in the subsequent trial to the court. Defendant asserts that the detention and frisk were unreasonable, because the officer had no grounds to believe that defendant had committed a crime or that he was armed and dangerous. The state argues that the detention was lawful and the frisk was justified to ensure the officer's safety.

There are three general categories of street encounters between police and citizens: (1) an arrest, requiring probable cause; (2) a stop, justified by reasonable suspicion; and (3) mere conversation requiring no justification. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). A stop occurs when an officer restrains a person's liberty by physical force or a show of authority. *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981); *State v. Warner, supra,* 284 Or at 162. To be lawful, a stop must be justified by a reasonable suspicion of criminal activity and is limited to making a reasonable inquiry. ORS 131.615(1). Mere conversation gives an officer no right to exercise any official authority. *State v. Messer,* 71 Or App 506, 510, 692 P2d 713 (1984).

Even if we assume that the officer was justified in his initial inquiry as to defendant's identity and his ability to drive, the end of that inquiry came when defendant produced a valid identification card and responded that he had no driver's license. At that point there were no articulable facts from which the officer could reasonably suspect that defendant had committed a crime. The crime for which the driver was arrested did not relate in any way to defendant. No crime had been reported in the area, and there was no indication of any criminal activity on the part of the woman in the parked car or the man walking on the road. There was no apparent relationship between them and defendant. Defendant's nervousness and the fact that he seemed to be sitting at an odd angle did not justify a reasonable belief that he had committed a crime.

The officer supposedly only became concerned when he conducted a record check and found defendant's previous conviction. The fact that a MVD records check disclosed that defendant had been convicted of a robbery about five years before did not justify a belief that he was then engaged in criminal activity or was armed and presently dangerous. The state contends that ORS 131.625,[1] which permits the frisk of a

---

[1] ORS 131.625 provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) If, in the course of the frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such action as is reasonably necessary to take possession of the weapon."

stopped person, justified this frisk. That argument, however, fails, because there had been no lawful stop of defendant. A stop occurred no later than when defendant was asked to step out of the car. Before a frisk may be conducted under ORS 131.625, there must have been a lawful stop under ORS 131.615. For the same reason, the state cannot rely on *State v. Bates,* 304 Or 519, 747 P2d 991 (1987), which is limited to lawful encounters.[2] Here, the officer acted on no more than intuition. Intuition or instinct, even of an experienced officer, cannot amount to reasonable suspicion. *State v. Valdez,* 277 Or 621, 628, 561 P2d 1006 (1977); *State v. Butkovich,* 87 Or App 587, 590, 743 P2d 752, *rev den* 304 Or 548, (1987). The evidence and defendant's statements were obtained as a result of an unlawful stop and should have been suppressed.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

I dissent. The majority opinion is inconsistent with controlling precedent and common sense. In *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court said:

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based on specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." (Emphasis supplied.)

Under *Bates,* we must follow a simple two step inquiry: first, was the encounter lawful; and, second, was the frisk based on specific and articulable facts that defendant might pose an immediate threat of serious physical injury to the officer or others.

First, the majority's unsupported assertion that the encounter here was not lawful is incorrect. Like many cases arising from a stop of an automobile, defendant was at the least lawfully detained as a passenger in a vehicle lawfully

---

[2] In *State v. Bates, supra,* the Supreme Court held that an officer may take reasonable steps to protect himself or others if, during a lawful encounter with a citizen, the officer develops a reasonable suspicion that the citizen might pose a threat to the safety of the officer or others.

stopped. *State v. Bowen,* 88 Or App 584, 588, 746 P2d 249 (1987), *rev den* 305 Or 45 (1988).

Second, the officer's suspicion that defendant was armed was justified. At the time of the frisk, the officer knew that defendant had been convicted of armed robbery and had been released from prison three weeks before. The driver had stated that defendant was a hitchiker, but he had remained in a vehicle which was supposedly disabled. Defendant was sitting at an odd angle and appeared nervous. When asked to leave the car, he did so in such a way as to keep his back to the officer, by putting his feet up on the seat and sliding forward instead of sliding sideways with his feet on the floor. The officer testified:

"[N]ormally in my experience when somebody has to come out of the car from the passenger side to the driver's door, normally you would scoot across the seat and go out the door. But in this case [defendant] started to scoot and lifted his feet up on the seat toward me that way which I really thought was suspicious at that time.

"* * * * *

"I really became suspicious why he was scooting across the seat that way.

"* * * * *

"Well, I suspected that he might have a weapon on him and also if he did, my first suspicion would be that if he did, it would probably be in the side of his pants or in the middle of his back."

In the words of the trial court,

"I think when you take all of these facts into consideration, gentlemen, you have to conclude that Deputy Carpenter was obligated to search this man. I think if he hadn't, he would have been derelict in his duties."

As the Supreme Court stated in *State v. Bates, supra:*

"[I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to

take safety precautions in such situations. Our inquiry therefore is limited to whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time the decision was made." 304 Or at 524.

The majority would require something more to justify a reasonable suspicion that defendant was carrying a gun. As the events in this case developed, something more could have been an attempt by defendant to pull out his gun. The law does not, and should not, require police officers to be sitting ducks, at the mercy of lawfully detained persons who are armed.