Argued and submitted April 28, 1994, reversed and remanded April 26, petition for review denied July 5, 1995 (321 Or 340)

STATE OF OREGON,
*Appellant,*

*v.*

RONALD WOODS,
*Respondent.*

(C-9301-30586; CA A80196)

894 P2d 511

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Eric R. Johansen, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

The state appeals from an order suppressing evidence seized during a traffic stop of a vehicle in which defendant was a passenger. We reverse and remand.

The facts are undisputed.[1] On May 12, 1993, Officer Gustafson received a report that a described car had been involved in an apparent drug buy. Gustafson and his partner, who were on patrol a block away from the scene of the buy, followed the car and stopped it after it failed to signal within 100 feet of making a left turn. In addition to the driver, there was a male passenger in the front seat and a female passenger in the back seat of the car. The driver was arrested for failure to display a driver license and was placed in the patrol car. Gustafson then asked defendant, the front seat passenger, if he had a driver license. When defendant said no, Gustafson informed him that the car was going to be towed, and asked him to step out of the car.

According to Gustafson's testimony, if either defendant or the back seat passenger had been able to drive the car away, he would have allowed them to do so, assuming that the owner consented, rather than leave the car where it was or have it towed. Gustafson also testified that the decision to tow was made when he determined that defendant was not able to drive the car. He admitted, however, that, at that time, he had not yet asked the back seat passenger if she had a driver license. He explained that because of the small size of the car, defendant would have had to get out of the car in order for Gustafson to converse with the other passenger.

When defendant got out of the car, Gustafson saw three off-white chunks of a rock-like substance sitting on the passenger seat. He recognized the chunks as crack cocaine and arrested defendant for possession of a controlled substance. After the back seat passenger was arrested on an outstanding warrant, the car was inventoried and towed, but no other controlled substances were found.

Defendant was charged by indictment with possession of a controlled substance, cocaine. ORS 475.992. In a

---

[1] Although defendant argued the facts somewhat differently before the trial court, he accepts the state's recitation of the facts on appeal.

pretrial hearing on his motion to suppress all evidence, defendant argued that he was unlawfully stopped when Gustafson asked for his identification and ordered him out of the car. The trial court first concluded that both the stop of the vehicle and the arrest of the driver were lawful. However, it found that the reason given for asking defendant out of the car, *viz.*, that the car was going to be towed, was a "pretext justification" to further Gustafson's interest in looking for controlled substances:

> "If they're telling me that the reason for asking [defendant] out of the car was to have the car towed, they did not yet know that the woman in the backseat had given false names, had a warrant out for her, and had no driver's license. * * * *If they asked him to get out just so they could speak to her, that would be fine, but not why Gustafson said they asked him out.* So what I think is they asked him out because they were looking for drugs, which is what they're supposed to do." (Emphasis supplied.)[2]

The trial court then indicated that it believed that it was compelled by our decision in *State v. Houghton*, 91 Or App 71, 754 P2d 13 (1988), to conclude that defendant was unlawfully stopped when he was asked to get out of the car.[3] The court's conclusion was based on its reading of *Houghton* "as essentially saying that pretext justification doesn't work." In other words, the court concluded that, in its view, the fact that the request of defendant to get out of the car was a pretext to investigate offenses not related to the traffic stop converted the encounter into an unlawful stop. The court granted defendant's motion to suppress on that basis.

On appeal, the state argues that defendant was not stopped when Gustafson asked him out of the car. We agree. The trial court concluded that the vehicle in which defendant

---

[2] The court made the following findings:

"[The officers] stopped the car and they inquired of the driver, they arrested the driver for no operator—but what they were *still* doing, on the information that somebody went to and from a drug house, was looking for drugs. And that when they asked the defendant out of the car, *that's really why they asked him out.* Just like when they really stopped the car the dominant motivation was looking for drugs. And the reason they now justify it and I think legitimately, they have a pretext justification, which is the tow." (Emphasis supplied.)

[3] A stop is "a temporary restraint of a person's liberty by a peace officer lawfully present in any place." ORS 131.605(5). A stop is lawful if it is justified by a reasonable suspicion that the person has committed a crime. ORS 131.615(1).

was riding was lawfully stopped, that the driver was lawfully arrested, and that one of the reasons Gustafson asked defendant to get out of the car was to arrange for the car's security. The court also found that Gustafson did intend to tow the car at some point and that the passengers would have had to get out of the car before that occurred. As we noted in *State v. Olson*, 116 Or App 525, 528, 842 P2d 424 (1992), "a passenger in an automobile must put up with some inconvenience and delay following a traffic stop without having been 'stopped' in the legal sense." Gustafson's action here was consistent with the acts of an officer conducting a traffic stop, *i.e.*, arranging for the tow of an arrested driver's car. The fact that the officer may have had other motivations does not make the action unlawful. *Accord State v. Olaiz*, 100 Or App 380, 384, 786 P2d 734, *rev den* 310 Or 122 (1990) (additional motives for stopping a vehicle are immaterial where officer's actions are consistent with the acts of an officer investigating a traffic infraction).

We also agree with the state that the trial court erred in believing that its decision was compelled by our opinion in *Houghton*. In that case, an officer encountered a car parked beside the road. The officer had previously arrested the driver for driving while suspended, so he stopped and again arrested the driver. The driver explained that his car had broken down and that the defendant, a passenger, was a hitchhiker. The officer then asked the defendant for identification. The defendant presented a valid Oregon identification card and said that he had no driver license. Nevertheless, based on his belief that the defendant seemed to have something to hide, the officer ran a records check and discovered that the defendant had a previous robbery conviction. Because of that discovery, he ordered the defendant out of the car and frisked him. During the frisk, the officer found a concealed revolver. 91 Or App at 73.

The defendant in *Houghton* appealed his conviction for being a felon in possession of a firearm. In that case, it was not disputed that when the defendant was asked out of the car and frisked, he was stopped. The state contended, however, that the stop was *lawful*, based on the officer's reasonable suspicion that the defendant had committed a crime. Although the justification for the officer's initial inquiry in

that case was arguably a "pretext,"[4] we expressed no opinion on that issue. Rather, we concluded that even *assuming* that the initial inquiry was justified, the defendant was stopped when he was asked out of the car, and the stop was not justified by a reasonable suspicion of criminal activity.

The circumstances and legal issues presented by this case are quite different than those in *Houghton*. First, in *Houghton*, the state did not dispute that the defendant was stopped when he was asked to step out of the car; rather, the state unsuccessfully attempted to justify the stop by arguing that the officer had a reasonable suspicion that the defendant had committed a crime.

Further, in *Houghton*, the interaction between the officer and the passenger was unrelated to the valid stop and arrest of the driver and, therefore, it was analyzed in isolation, without reference to those preceding events. Here, however, the state asserts — we believe accurately — that the officer's request that defendant leave the car should not be considered in isolation, because the request was a practical consequence of the driver's arrest and the officer's decision to have the car towed. As a result, any interference with defendant's alleged entitlement to remain seated was reasonable in the light of the officer's expressed interest in arranging for the security of the arrested driver's car.[5] We conclude that, under these circumstances, defendant was not stopped when he was asked to get out of the car.

On appeal, defendant argues that, because the state failed to present evidence of the officers' authority to impound and inventory the vehicle, the trial court was correct in granting his motion to suppress. He contends that "the trial court could not determine as a matter of law, that the seizure and search of the *vehicle* satisfied Article I, section 9 of

---

[4] The officer testified that he asked the defendant about his identity and ability to drive because the arrested driver might have wanted to release the car to him. 91 Or App at 73. However, the officer had been told that defendant was a hitchhiker and that the car was inoperable.

[5] Defendant has never argued in this case, nor would the evidence support such an argument, that Gustafson prevented him from leaving the scene or that defendant held a subjective belief that he was not free to leave.

the Oregon Constitution.'' (Emphasis supplied.) As a consequence, he argues, ''the state failed to meet its burden of proof to support the warrantless search.''

We first note that defendant did not challenge below the officers' authority to impound the vehicle.[6] Moreover, defendant's argument presupposes that the evidence at issue here was discovered during the course of a warrantless *search* of the vehicle. In fact, the trial court found that when defendant stood up, the cocaine was in plain view, and defendant does not challenge that finding on appeal. Defendant also does not contend that the state's alleged failure of proof regarding the authority to tow vitiates the officer's asserted authority for asking defendant to get out of the car, and we express no opinion on that issue.

We conclude that defendant was not stopped when he was asked to step out of the car, and that the trial court erred in suppressing the evidence on that basis.

Reversed and remanded.

---

[6] At most, defendant argued that the officers were not *required* to tow:

"[DEFENSE COUNSEL]: The only thing about the towing, and the record as it stands on that point on the towing, we don't have any indication from the record that this was something that had to be done. I think, as the record stands, *it's something that was a matter of choice.* * * * [T]hat it's a matter of practice doesn't mean it's a requirement. And to step beyond that, it's not a requirement that [defendant] be ordered out of the car so that this discretionary thing can be done that isn't, as far as we know, requested by the owner of the vehicle." (Emphasis supplied.)